### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
**Eastern Division**

| | |
|---|---|
| **In Re** | **Chapter 7** |
| **CHRISTEL R. GLASER,** | **Case No. 14-10747** |
| **Debtor** | |

| | |
|---|---|
| **JOHN J. AQUINO,** | **Adv. Proceeding No.:** |
| **CHAPTER 7 TRUSTEE** | |
| **OF CHRISTEL R. GLASER,** | |
| **Plaintiff** | |
| **v.** | |
| **NATIONSTAR MORTGAGE LLC,** | |
| **Defendant** | |

### COMPLAINT

John J. Aquino, the duly appointed Chapter 7 trustee (the "Trustee" or "Plaintiff") of the bankruptcy estate of Christel R. Glaser (the "Debtor"), submits this Complaint against Nationstar Mortgage LLC ("Nationstar" or "Defendant").

**Preliminary Statement**

1.   In this adversary proceeding, the Trustee seeks a judgment avoiding a certain alleged mortgage lien on real property located in Merrimac, Massachusetts as the result of a defective power of attorney utilized to grant the subject mortgage lien, and as the result of a defective acknowledgment of the execution of the subject mortgage, together with certain related remedies, including recovery of the property transferred, or the value

thereof, and the preservation of the subject lien for the benefit of the bankruptcy estate.

The Trustee also seeks a declaration that any alleged obligation owed to Nationstar is, at

best, a non-recourse obligation.

### Jurisdiction And Venue

2.   Jurisdiction over this adversary proceeding is based upon 28 U.S.C. §§151,

157 and 1334.

3.   This is a "core" proceeding as that term is defined in 28 U.S.C. §157(b)(2)(A),

(E), (K), and (O).

4.   The District of Massachusetts is the proper venue for this adversary

proceeding pursuant to 28 U.S.C. §1409.

### Parties

5.   The Plaintiff, John J. Aquino, is the duly appointed and acting Chapter 7

trustee of the Debtor, Christel R. Glaser.  The Trustee has an office address of 240 Lewis

Wharf, Boston, Massachusetts.

6.   Upon information and belief, the Defendant Nationstar Mortgage LLC is a

registered foreign limited liability company with a principal office located at 8950

Cypress Waters Blvd., Coppell, Texas 75019, and a local office located at 84 State Street,

Boston, Massachusetts 02109.

### Facts

7.   By deed dated October 25, 1993, and recorded at the Southern Essex District

Registry of Deeds at Book 12196, Page 345, the Debtor and non-debtor Mark G. Glaser

("Mark Glaser") jointly acquired the fee interest in certain real property known and

located at 97 River Road, Merrimac, Massachusetts 01860 (the "Property").  A copy of

the aforesaid deed is attached hereto as Exhibit A.

8.   On April 22, 2004, the Debtor executed a promissory note in the original amount of $264,500.00 in favor of First Residential Mortgage Network, Inc. of Louisville, Kentucky (the "Note").  The Note executed by the Debtor was executed on behalf of Mark Glaser pursuant to a power of attorney granted by Mark Glaser to the Debtor on April 20, 2004.  There is no indication on the Note that the Debtor executed the Note in her individual capacity.  A copy of the Note is attached hereto as Exhibit B.

9.   On several occasions, Nationstar has acknowledged that the Debtor was not personally obligated on the Note.  By letter dated January 23, 2014 from Nationstar to the Office of the Attorney General of the Commonwealth of Massachusetts (the "Attorney General Letter"), Nationstar represented that its records reflected that the Debtor was obligated under the Mortgage (as defined below), but was not a party to the Note or personally liable for its payment.  A copy of the Attorney General Letter is attached hereto as Exhibit C.

10.   On May 17, 2004, a mortgage document was recorded at the Southern Essex District Registry of Deeds, Book 22849, Page 573 purporting to grant a mortgage interest in the Property to First Residential Mortgage Network, Inc. to secure the repayment of the Note (the "Mortgage").  The Mortgage appears to be dated as of April 22, 2004, and purports to have been executed by "Mark G. Glaser, individually and as attorney in fact for Christel Rae Glaser pursuant to a power of attorney dated 4-20-04 to be recorded herewith."  A copy of the Mortgage is attached hereto as Exhibit D.

11.   The notarized acknowledgment set forth on the Mortgage is undated, and recites that "Mark G. Glaser, individually and as attorney in fact as aforesaid" appeared before the Notary Public, but fails to set forth the method of identification.  The subject

acknowledgment further states that Mark G. Glaser acknowledged that "he/she signed voluntarily for the stated purpose". Notwithstanding the foregoing, upon information and belief, there may exist factual dispute as to the identity of the individual who appeared and executed the Mortgage.

12.   A power of attorney document was also recorded on May 17, 2004 at the Southern Essex District Registry of Deeds, Book 22849, Page 570 (the "Power of Attorney"). The Power of Attorney recites that it was executed by Mark G. Glaser and purports to grant to Christel Rae Glaser the power to execute documents in Mark Glaser's name with respect to the Property. A copy of the Power of Attorney is attached hereto as Exhibit E.

13.   The Defendant Nationstar asserts that it is the successor in interest to First Residential Mortgage Network, Inc. by virtue of one or more assignments.

14.   The Debtor filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on February 27, 2014 (the "Petition Date").

15.   On July 16, 2014, Nationstar filed its *Motion Of Nationstar Mortgage LLC For Relief From The Automatic Stay Pursuant To 11 U.S.C. §362* (the "Stay Relief Motion"), pursuant to which it asserted that the Debtor and non-debtor Mark Glaser executed the Note, and that the Mortgage was also executed by the Debtor and Mark Glaser. Nationstar asserted at that time that it was due the amount of $303,381.31, and that the Property then had a liquidation value of approximately $651,420.00.

16.   The Stay Relief Motion was withdrawn by Nationstar after objection by the Trustee.

17.   The Property is property of the estate pursuant to the provisions of 11 U.S.C.

§541.

18.   The transfer of the Mortgage is a transfer of an interest of the Debtor.

## COUNT I

### Declaration That Alleged Obligation To Nationstar Is
### Without Recourse To Estate – 11 U.S.C. §502

19.   The Trustee repeats and realleges the statements and allegations contained in Paragraphs 1 through 18 of this Complaint, and incorporates same herein by reference.

20.   The form and content of the Note clearly establishes that the Debtor did not execute the said document in an individual capacity.

21.   Nationstar has admitted in the Attorney General Letter that the Debtor was not a party to the Note nor personally responsible therefor.

22.   Contrary to the assertions made by Nationstar in its now-withdrawn Stay Relief Motion, there is no basis to assert that Nationstar has recourse against the Debtor or the Chapter 7 estate beyond any valid mortgage interest that may be established.

23.   Pursuant to 11 U.S.C. §502, the Trustee requests that the Court declare that the Note is non-recourse to the Debtor and to the Chapter 7 estate.

## COUNT II

### Determination of Secured Status And Avoidance of Lien
### 11 U.S.C. §§506(d) and 544

24.   The Trustee repeats and realleges the statements and allegations contained in Paragraphs 1 through 23 of this Complaint, and incorporates same herein by reference.

25.   Pursuant to M.G.L. ch.183, §32, a power of attorney utilized in connection with the recording of a deed or mortgage must also be recorded in order to establish authorization.

26.   As set forth herein, the Mortgage purports to be executed by Mark Glaser

under a recorded power of attorney.  The Power of Attorney recorded at the Southern

Essex District Registry of Deeds, however, was a grant of a power of attorney by Mark

Glaser to the Debtor.  There was no power of attorney recorded which authorized Mark

Glaser to execute the Mortgage on behalf of the Debtor.

27.  As the result of the failure to record an appropriate power of attorney, the

Mortgage is materially defective, was not properly authorized and executed, and cannot

be enforced against the Trustee.

28.  11 U.S.C. §544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without
regard to any knowledge of the trustee or of any creditor, the rights and powers of, or
may avoid any transfer of property of the debtor or any obligation incurred by the debtor
that is voidable by…

(2) a creditor that extends credit to the debtor at the time of the
commencement of the case, and obtains at such time and with respect to such credit, an
execution against the debtor that is returned unsatisfied at such time, whether or not such
a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor,
against whom applicable law permits such transfer to be perfected, that obtains the status
of a bona fide purchaser and has perfected such transfer at the time of the commencement
of the case, whether or not such purchaser exists.

29.  In light of the defective power of attorney, and pursuant to the so-called

"strong arm" provisions of Section 544(a) of the Bankruptcy Code, the Trustee is entitled

to a judgment avoiding the grant of the Mortgage by the Debtor.

30.  Pursuant to 11 U.S.C. §§506(d) and 544, and Fed. R. Bankr. P. 7001(2), the

Trustee requests that the Court determine the validity, priority and extent of the Mortgage

as a lien against the Property and issue an order avoiding the Mortgage.

## COUNT III

### Determination of Secured Status And Avoidance of Lien
### 11 U.S.C. §§506(d) and 544

31.   The Trustee repeats and realleges the statements and allegations contained in

Paragraphs 1 through 30 of this Complaint, and incorporates same herein by reference.

32.   Pursuant to M.G.L. ch. 183, §29, no deed or mortgage may be recorded

without a certificate of its acknowledgment or proof of its due execution.

Chapter 183, Section 29 of the Massachusetts General Laws provides as follows:

> No deed shall be recorded unless a certificate of its acknowledgment or of
> the proof of its due execution, made as hereinafter provided, is endorsed upon or
> annexed to it, and such certificate shall be recorded at length with the deed to
> which it relates; but this section shall not apply to conveyances from the United
> States.

M.G.L. c. 183, §29.

33.   Assuming that the Mortgage was executed by Mark Glaser as set forth therein,

the acknowledgment affixed to the Mortgage contains material defects in that: (i) the

acknowledgment does not set forth the date upon which the acknowledgment purportedly

occurred; (ii) does not set forth the manner of identification; (iii) is unclear as to whether

the acknowledgment is intended to reflect the free act and deed of both the signer and the

Debtor; and (iv) improperly states that Mark Glaser appeared "individually and as

attorney in fact" as Mark Glaser was without authority to execute the Mortgage on behalf

of the Debtor, and could not have appeared in such capacity.

34.   11 U.S.C. §544(a) provides:

> (a) The trustee shall have, as of the commencement of the case, and without
> regard to any knowledge of the trustee or of any creditor, the rights and powers of, or
> may avoid any transfer of property of the debtor or any obligation incurred by the debtor
> that is voidable by…
>
> (2) a creditor that extends credit to the debtor at the time of the

commencement of the case, and obtains at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

       (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

35.   In light of the defective acknowledgement, the Mortgage did not provide actual or constructive notice to the Trustee, and pursuant to the so-called "strong arm" provisions of Section 544(a) of the Bankruptcy Code, the Mortgage is not enforceable as against the Trustee or estate, and the Trustee is entitled to a judgment avoiding the grant of the Mortgage by the Debtor.

36.   Pursuant to 11 U.S.C. §§506(d) and 544, and Fed. R. Bankr. P. 7001(2), the Trustee requests that the Court determine the validity, priority and extent of the Mortgage as a lien against the Property and issue an order avoiding the Mortgage.

## COUNT IV

### Determination of Secured Status And Avoidance of Lien
### 11 U.S.C. §§506(d) and 544

37.   The Trustee repeats and realleges the statements and allegations contained in Paragraphs 1 through 36 of this Complaint, and incorporates same herein by reference.

38.   Pursuant to M.G.L. ch. 183, §29, no deed or mortgage may be recorded without a certificate of its acknowledgment or proof of its due execution. Chapter 183, Section 29 of the Massachusetts General Laws provides as follows:

       No deed shall be recorded unless a certificate of its acknowledgment or of the proof of its due execution, made as hereinafter provided, is endorsed upon or annexed to it, and such certificate shall be recorded at length with the deed to which it relates; but this section shall not apply to conveyances from the United States.

M.G.L. c. 183, §29.

39.   As noted in Paragraph 11 above, the Trustee believes that there may be a

factual dispute regarding the identification of the person who executed the Mortgage.  In

the event that facts establish that the Mortgage was actually executed by the Debtor, the

acknowledgement is materially defective as it identifies the wrong person as the

individual who appeared and purportedly executed the Mortgage as his/her free act and

deed.  *See, e.g., DeGiacomo v. CitiMortgage, Inc.*, 2012 WL 272750 (Bankr. D. Mass

2012).

40.   11 U.S.C. §544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without
regard to any knowledge of the trustee or of any creditor, the rights and powers of, or
may avoid any transfer of property of the debtor or any obligation incurred by the debtor
that is voidable by…

(2) a creditor that extends credit to the debtor at the time of the
commencement of the case, and obtains at such time and with respect to such credit, an
execution against the debtor that is returned unsatisfied at such time, whether or not such
a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor,
against whom applicable law permits such transfer to be perfected, that obtains the status
of a bona fide purchaser and has perfected such transfer at the time of the commencement
of the case, whether or not such purchaser exists.

41.   In light of the defective acknowledgement, the Mortgage did not provide

actual or constructive notice to the Trustee, and pursuant to the so-called "strong arm"

provisions of Section 544(a) of the Bankruptcy Code, the Mortgage is not enforceable as

against the Trustee or estate, and the Trustee is entitled to a judgment avoiding the grant

of the Mortgage by the Debtor.

42.   Pursuant to 11 U.S.C. §§506(d) and 544, and Fed. R. Bankr. P. 7001(2), the

Trustee requests that the Court determine the validity, priority and extent of the Mortgage

as a lien against the Property and issue an order avoiding the Mortgage.

## COUNT V

### Liability For Avoided Transfer – 11 U.S.C. §550(a)(1)

43.   The Trustee repeats and realleges the allegations contained in Paragraphs 1

through 42 hereof, and by reference incorporates them herein and makes them a part of

this claim.

44.   The Defendant is the initial transferee of the Debtor, or is the immediate or

mediate transferee of the initial transferee.

45.   Pursuant to 11 U.S.C. §550 (a)(1) and (2), the Trustee is entitled to recover

from the Defendant either the property transferred or, if the Court so orders, the value of

the property transferred from the initial transferee, or the immediate or mediate transferee

of the initial transferee.

## COUNT VI

### Preservation Of Avoided Transfer for Estate
### 11 U.S.C. §551

46.   The Trustee repeats and realleges the allegations contained in Paragraphs 1

through 45 hereof, and by reference incorporates them herein and makes them a part of

this claim.

47.   Pursuant to 11 U.S.C. §551, the Trustee requests that the Court enter an

order preserving the avoided Mortgage for the benefit of the estate.

WHEREFORE,  the Trustee respectfully prays that the Court:

1.  Enter judgment on behalf of the Trustee with respect to Count One of the within Complaint and determine that any indebtedness owing on account of the Note is non-recourse beyond any valid mortgage claim that Defendant may be determined to hold;

2.  Enter judgment on behalf of the Trustee on Counts II-IV and avoiding the Mortgage pursuant to the provisions of 11 U.S.C. §544;

3.  Enter judgment on behalf of the Trustee and against the Defendant with respect to Count V of the within Complaint and awarding the Trustee recovery of either the property transferred or the value thereof;

4.  Enter judgment for the Trustee on Count VI of the Complaint and enter an Order pursuant to the provisions of 11 U.S.C. §551 preserving the Mortgage for the benefit of the bankruptcy estate herein; and

4.  Grant such other and further relief as may be just and proper.


JOHN J. AQUINO
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Donald F. Farrell, Jr.
Donald F. Farrell, Jr. (BBO 159580)
ANDERSON AQUINO LLP
240 Lewis Wharf
Boston, MA  02110
617-723-3600
dff@andersonaquino.com


Dated:  February 22, 2016.

# EXHIBIT A

I, ANN CROWELL FRASER   *AKA - Ann C. Fraser*

of Merrimacport,                                    Essex County, Massachusetts,

*being married*, for consideration paid     Three Hundred Thirty-five Thousand ($335,000.00) Dollars

grant to MARK G. GLASER and CHRISTEL RAE GLASER, husband and wife, as tenants by the entirety,

of 97 River Road, Merrimacport, Essex County, Massachusetts   with *quitclaim covenants*

(Description and encumbrances, if any)

The land in Merrimac, Essex County, Massachusetts, in that part called Merrimacport, together with the buildings thereon, containing about one hundred and ten rods, bounded and described as follows:

| | |
|---|---|
| NORTHERLY | by the River Road, formerly called Merrimac Street, and Main Street; |
| EASTERLY | by land of Gibbons, formerly of the heirs of William Chase; |
| SOUTHERLY | by the Merrimac River; and |
| WESTERLY | by land of Gibbons, formerly of the heirs of Patten Sargent. |

This conveyance is made subject to the existing sewerage rights across said property and subject to the conditions that no buildings, fences or other obstructions are to be placed on the easterly portion of said premises, insofar as the same are legally in force and applicable.

Being the same premises conveyed to me by deed dated March 14, 1991, and recorded with the Essex South District Registry of Deeds in Book 11500, Page 455.

**Witness** my hand and seal this 25th day of October, 1993

_____     *Ann Crowell Fraser*
                              ANN CROWELL FRASER

## THE COMMONWEALTH OF MASSACHUSETTS

Essex,ss                                    October 25, 1993

Then personally appeared the above named ANN CROWELL FRASER and

acknowledged the foregoing instrument to be her free act and deed, before me,

                              *Harley H. Anderson*
                              Harley H. Anderson, Notary Public
                              My Commission expires August 18, 2000

DEEDS REG 10
ESSEX SOUTH
10/25
CANCELLED

TAX     1527.60
CASH    1527.60
3657A406 11149
EXCISE TAX

# EXHIBIT B

*Loan Number:* ███████

# FIXED/ADJUSTABLE RATE NOTE

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 22, 2004        Merrimac, MASSACHUSETTS

### 97 River Road
### Merrimac, MASSACHUSETTS 01860
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $264,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **First Residential Mortgage Network, Inc.** . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.000%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1st** day of each month beginning on **June 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at

### First Residential Mortgage Network, Inc.
### 9500 Ormsby Station Rd
### Louisville, KENTUCKY 40223
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$1,262.76**. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1st** day **May, 2009**, and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR -Single Family Fannie Mae UNIFORM INSTRUMENT    Form 3528 6/01
Page 1 of 4

IDS, Inc. - (800) 554-1872        Borrower(s) Initials _____

Loan Number:

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE FOURTH** percentage points (**2.250%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.000%** or less than **2.250%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points from the rate of interest I have been paying for the preceding **TWELVE** months. My interest rate will never be greater than **9.000%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

---

MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR -Single Family Fannie Mae UNIFORM INSTRUMENT      Form 3528 6/01

Page 2 of 4

IDS, Inc. - (800) 554-1872            Borrower(s) Initials

Loan Number: ████████

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

---

MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR -Single Family Fannie Mae UNIFORM INSTRUMENT     Form 3528  6/01
Page 3 of 4

IDS, Inc. - (800) 554-1872                                                                    Borrower(s) Initials

Loan Number: ███████

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Mark G. Glaser By Christel Rae Glaser_ _____ (Seal)
**Mark G. Glaser** By Christel Rae Glaser -Borrower                            -Borrower
Social Security Number: 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    as Attorney-in- Social Security Number:
Dated: _____04/22/2004_____   -fact   Dated: _____
                                         CRG

                                                         *(Sign Original Only)*

_Danielle L Ryan_ _____
Witness

COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

PAY TO THE ORDER OF
WITHOUT RECOURSE
BY:
FIRST RESIDENTIAL MORTGAGE NETWORK, INC.
BRYCE MALONE
VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY _____
David A. Spector
Managing Director

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, NA
BY _____
LAURIE MEDER
VICE PRESIDENT

---

MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR -Single Family Fannie Mae UNIFORM INSTRUMENT          Form 3528  6/01
Page 4 of 4

# EXHIBIT C



January 23, 2014

Michael Lecaroz
Senior Loan Modification Specialist, HomeCorps Special Council Team
Office of the Attorney General
One Ashburton Place
Boston, MA 02108

RE:     Nationstar Reference Number – 9300
        Property Address – 97 River Road, Merrimac, MA 01860

Dear Michael Lecaroz:

Nationstar Mortgage LLC (Nationstar) is issuing this Letter in response to dialogue which occurred on January 9, 2014. At the time of our discussion, you requested that Ms. Cristel Glaser not be listed as party, nor held accountable, for certain responsibilities as borrower under specific loan documents.

Nationstar sincerely apologizes for any miscommunication experienced.  Our records indicate while Cristel Glaser is in fact listed on the Security Instrument dated April 22, 2004, she is not listed as Party to the Note. As such, with the exception of discovery of documentation contradicting this fact, Cristel Glaser will not be held responsible for requirements of the loan under the Note.

At Nationstar, customer concerns are important to us. Should you have any general questions other than those referenced in your correspondence, please contact:

Customer Service Department
Monday through Friday, 8 a.m. to 9 p.m. CDT
Saturday,  8 a.m. to 12 p.m. CDT
Toll-free number 1.888.511.5279

Sincerely,

Renee Harrison
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067
phone: 469.426.3132
e-mail: Renee.Harrison@nationstarmail.com

By United States Postal Service

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.

# EXHIBIT D

WHEN RECORDED, MAIL TO:
**First Residential Mortgage Network, Inc.**
**9500 Ormsby Station Rd**
**Louisville, KENTUCKY 40223**

This Instrument was prepared by:
**First Residential Mortgage Network, Inc.**
**9500 Ormsby Station Rd**
**Louisville, KENTUCKY 40223**
**502-315-4700**



2004051700103 Bk:22849 Pg:573
05/17/2004 09:17:00   MTG Pg 1/12

Loan Number: █████████
Order Number: _____ (Space Above This Line For Recording Data) _____

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **April 22, 2004**, together with all Riders to this document.

**(B) "Borrower"** is Mark G. ~~Glasser, individually~~  *Glaser, and Christel Rae Glaser, by Mark G. Glaser, her attorney in fact pursuant to a power of attorney dated April 20, 2004 to be recorded herewith*. Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is First Residential Mortgage Network, Inc., organized and existing under the laws of Kentucky.
Lender's address is **9500 Ormsby Station Rd, Louisville, KENTUCKY 40223**. Lender is the mortgage under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **April 22, 2004**. The Note states that Borrower owes Lender **TWO HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED and no/100** Dollars (U.S. **$264,500.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2034**.

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] VA Rider |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |
| [ ] Other (Specify) - | | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

---

**MASSACHUSETTS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3022 1/01**

IDS, Inc. - (800) 554-1872

Borrower(s) Initials: _____

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of **ESSEX**:

      **See Attached Exhibit 'A'**

Parcel Identification Number:

which currently has the address of: **97 River Road**
                       **Merrimac, MASSACHUSETTS 01860**                              ("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

      BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

      **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

      Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

      **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

      If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

      Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

---

**MASSACHUSETTS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                      Page 2 of 8

Form 3022 1/01

Borrower(s) Initials

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall

---

**MASSACHUSETTS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 3 of 8

IDS, Inc. - (800) 554-1872

Form 3022 1/01

Borrower(s) Initials

cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate

---

**MASSACHUSETTS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 4 of 8

Form 3022 1/01

IDS, Inc. - (800) 554-1872

Borrower(s) Initials

building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, and other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following

---

fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property

---

**MASSACHUSETTS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3022  1/01

IDS, Inc. - (800) 554-1872

Borrower(s) Initials

(a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)

Mark G. ~~Glassen~~ Glaser, individually -Borrower
and as attorney in fact for Christel Rae Glaser
pursuant to a power of attorney dated 4.20.04
to be recorded herewith

_____          _____ (Seal)
                                                                        -Borrower

COMMONWEALTH OF **MASSACHUSETTS, ESSEX** County ss:

On _____ before me, the undersigned, a Notary Public in and for said State personally appeared Mark G. ~~Glassen~~ Glaser, individually and as attorney in fact as aforesaid proved to me through satisfactory evidence of identification, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed voluntarily for the stated purpose.

Witness my hand and official.

My Commission Expires: __11-13-09__

(Reserved for official seal)

Notary Public
Typed or Printed Name: __Danielle C. Ryer__

2004051700103 Bk:22849 Pg:581
05/17/2004 09:17:00 MTG Pg 9/12

Loan Number: █████

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **22nd** day of **April, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

### First Residential Mortgage Network, Inc.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**97 River Road
Merrimac, MASSACHUSETTS 01860**
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of **4.000%**. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1st** day of **May, 2009**, and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE FOURTH** percentage points **(2.250%)** to the Current Index. The Note Holder will then round the result of this

---

2004051700103 Bk:22849 Pg:582
05/17/2004 09:17:00 MTG Pg 10/12

*Loan Numb*[REDACTED]

addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.000%** or less than **2.250%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points from the rate of interest I have been paying for the preceding **TWELVE** months. My interest rate will never be greater than **9.000%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

---

2004051700103 Bk:22849 Pg:583
05/17/2004 09:17:00 MTG Pg 11/12

*Loan Number:* ████

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
Mark G. ~~Glaser~~ Glaser, -Borrower      -Borrower

*individually and as attorney in fact for Christel Rae Glaser pursuant to a power of attorney dated 4-20-04 to be recorded herewith*

*(Sign Original Only)*

MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR - Single Family - **Fannie Mae UNIFORM INSTRUMENT**
Page 3 of 3                                                                                          Form 3187 6/01
IDS, Inc. - (800) 554-1872

2004051700103 Bk:22849 Pg:584
05/17/2004 09:17:00 MTG Pg 12/12

## Exhibit A - Property Description

Closing date:          **April 22, 2004**

Borrower(s):          **Mark G. Glaser**

Property
Address:               **97 River Road, Merrimac, Massachusetts 01860**

**The land in Merrimac, Essex County, Massachusetts, in that part called Merrimacport, together with the buildings thereon, containing about one hundred and ten rods, bounded and described as follows:**

**NORTHERLY**          **by the River Road, formerly called Merrimac Street, and Main Street;**

**EASTERLY**           **by land of Gibbons, formerly of the heirs of William Chase;**

**SOUTHERLY**          **by the Merrimac River; and**

**WESTERLY**           **by land of Gibbons, formerly of the heirs of Patten Sargent.**

**This conveyance is made subject to the existing sewerage rights across said property and subject to the conditions that no buildings, fences or other obstructions are to be placed on the easterly portion of said premises, insofar as the same are legally in force and applicable.**

**Being the same premises conveyed to Mark G. Glaser and Christel Rae Glaser by deed of Ann Crowell Fraser, dated October 25, 1993 and recorded at the Essex South District Registry of Deeds at Book 12196 Page 345.**

©1986-2004 Standard Solutions, Inc 781-324-0550

# EXHIBIT E



2004051700100 Bk:22849 Pg:570
05/17/2004 09:17:00   OTHER Pg 1/1

## Limited Power of Attorney

I, **Mark G. Glaser**, of 97 River Road, Merrimac, MA 01860 do hereby make, constitute and appoint **Christel Rae Glaser**, 97 River Road, Merrimac, MA 01860, my true and lawful attorney, to execute any and all documents in my name and stead, and in general to do any and all things necessary to effectuate the refinance of 97 River Road, Merrimac, MA 01860 and also to sign any documents required in order to facilitate the refinance of said real estate, including, but not limited to, settlement statements or any other forms concerning the transaction  and to do all other things necessary or convenient to accomplish the said refinance.

This power of attorney shall not be affected by the subsequent disability or incapacity of the principal.

Executed as a sealed instrument this 20th day of April, 2004.

_Mark G. Glaser_
**Mark G. Glaser**

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                    April 20, 2004

          Then personally appeared the above named Mark G. Glaser and acknowledged the foregoing instrument to be his free act and deed, before me

_Danielle L. Ryer_
Notary Public Danielle L. Ryer
My Commission Expires: 7/09/10